Boone, et al. v. City of New York Mr. Schweitzer, you have reserved two minutes for rebuttal, so you may proceed. Thank you, Your Honor. Good morning. May it please the Court. Aaron Schweitzer for the plaintiffs, Eric Hu, NY Drilling, Inc., and 888 Consulting Corp. This Court will recall that this is not the first time this matter has come before it. This matter came before this Court first on a review of a grant of a motion to dismiss. In overturning that grant of motion to dismiss and letting the case proceed to discovery, this Court issued an opinion which focused on the comparators for the Leclerc claims of discrimination. And, as it turned out, it called out a number of potential comparators between the companies concerned at its own job sites and other job sites by other companies, between two different companies at the same job site, or, as discovery focused in on, on this particular case, comparisons between the treatment of white workers and Asian workers, regardless of what company they were working for at the same job site. And over the course of discovery, it became very clear that at the 34th Avenue job site, where the drilling with the catchment pond was taking place, the same inspector, Dennis Burkhart, treated white workers, Wayne Freed and Stephen Scrodato, with much more leniency than he did in the case. The argument is, of course, that the comparators changed between what was in your complaint and what was your opposition brief on the summary judgment motion. You swapped out one for a different one, and you don't generally get to do that, right? That's the argument, but it's not correct characterization of what occurred. What's in the complaint is that white workers at the 34th Avenue job site were treated differently from Asian workers at the 34th Avenue job site. The treatment of Asian workers at the 34th Avenue job site was called out by date, but the treatment of white workers was not. What we focused on in our opposition brief was a particular incident that didn't make it into the complaint, but that was explored more thoroughly in discovery. That's not an indication of a sham pleading or anything of the sort. That is exactly the sort of thing discovery is supposed to do, focus in on the particular incidents and explore them in depth. But, I mean, there's no mention of a March incident at all in the complaint, right? No, there isn't, but there isn't any mention of any particular date. But there is a sequence alleged in the complaint, right? There's a July 11th incident, and then there's a sequence that's described that takes place after that. Am I wrong about that? No, you're not wrong about that, but that is not, excuse me, that does not foreclose either exploration of other incidents at the job site or exploration of the vaguer allegation or broader allegation, I suppose, that white workers and Asian workers at that job site were treated differently. The second prong of Leclerc is evidence of discriminatory intent. Here we not only have the testimony of Mr. Freed and Mr. Scrodato, neither of whom was deposed, so their testimony is uncontroverted, that Mr. Burkhart expressed to them that they shouldn't work with Mr. Hu or with Asians, that they worked cheap, that Mr. Hu was a rat, excuse me. And we have additional affidavit testimony from Mr. Chiang, Chen, and Zhang that they disassociated themselves from Mr. Hu because they knew that if they hired him or if they kept him on, that their projects would be bogged down in endless regulatory wrangling, whereas if they hired somebody else, if they hired a white contractor, they would not. Excuse me. That inference of discriminatory intent is the second prong of the Section 1981 analysis, which we also allege that the district court got it wrong to dismiss. The first prong is that the victim was a racial minority. I don't think it's disputed that Eric Hu was an Asian man. Excuse me. But discriminatory intent is analyzed identically under Section 1981 and Leclerc, so I'm not going to belabor the point. The third is interference with contracts, and again we have the testimony of Mr. Chiang, Chen, and Zhang, that they discontinued their contracts, that they didn't, excuse me, and we have testimony from Mr. Hu that he wasn't paid under those contracts. And again, Mr. Chiang, Chen, and Zhang weren't deposed either. No discovery was taken with respect to them. So what we have is a bunch of uncontroverted evidence at the summary judgment stage. And we have a district court that says, despite the uncontroverted evidence at the summary judgment stage, I'm going to grant summary judgment anyway. And bear in mind, this is in context of a district court that already tried to get rid of this case at the motion to dismiss stage. This is not a case this district court wanted to hear from the very beginning. That can also be seen from the dismissal or decline to retain supplemental jurisdiction on the state law claims. So you're unhappy that the court didn't exercise supplemental jurisdiction. I mean, if we affirmed on the federal claim, but sent it back for the court to finish the job on the state claims, that's what you would want? Yes. This court is very familiar with this case. It's been pending before this court since 2017. Being long pending is one of the factors that should- Just a couple of minutes ago, you were suggesting that you couldn't get a fair shake from this district judge. I don't think so. I think that the district judge might not necessarily want to deal with the case, but I don't think that means that she wouldn't deal with it fairly if she had to deal with it. I mean, it's not a situation where it's a federal civil rights case, and then there's a state and a city human rights law case where the standards are really close and the elements are practically the same, even though the city always insists that there are some differences without telling us what they are. But this is a situation where we're dealing with just a general business law, right? It's different elements. It's a different thing altogether than the federal claim. Yes, but that's not the standard. The standard for retaining supplemental jurisdiction as a matter of discretion at this stage, when the case has been long pending, is that there's no novel issues of fact or law for the court to consider. You think that's the standard? There's no novel issues, and then it's an abuse of discretion for a court not to retain supplemental jurisdiction? In this particular case, I think it is. Because this case has, again, been around for now six years, five at the time of the grant of summary judgment. It went to summary judgment. It's ready for trial. It shouldn't have been remanded, regardless of what happened to the federal claims. I have 13 seconds, but I'll resume my rebuttal. All right. Thank you. We'll hear from Ms. Carlin. Sorry. May it please the court, Antonella Carlin for the defendants. The district court correctly granted summary judgment on plaintiff's selective enforcement claims because they cannot establish a similarly situated comparator for the 34th Avenue job site. Originally, I think as you've already kind of hashed out with my adversary, they had claimed up until opposing summary judgment, they had always claimed that it was a comparison between a July 2016 inspection and then a follow-up inspection. And then discovery revealed that there were two key differences between those inspections that justified the violation in July but not in August. So not similarly situated. So not similarly situated because in August there was no longer water, so it had been drained, the violation had been corrected. I thought it was a cure period in which there could be a violation issue. Yes, they have 40 days to cure and DOB can't issue a violation. And the second inspection was in that 40-day period. So even if the water had still been there, DOB could not issue a second violation. So those are the two independent reasons why the situations are different. So that should be the end of the case. But in opposition to our summary judgment motion, the plaintiffs asserted for the first time an entirely new factual theory that really finds no support in the record. There's nothing from any of the depositions, nothing about a March 23, 2016 inspection. It's only in affidavits submitted in opposition that they raise this issue. And it's pretty well settled that you can't evade summary judgment by asserting a completely new factual theory, especially when it contradicts your own prior sworn statements. But even if that weren't the case, there's so many internal inconsistencies with plaintiffs' new theory that it should just be rejected out of hand. And there's still key differences. Even if we can assume everything that plaintiff says is accurate, they say, oh, well, there was a lot of drilling going on, so the water was constantly being recycled in March 20, 2016. And in July, it was just a stagnant pool of water, which you can see in the pictures. I think they're at, sorry, maybe 1441 and 42 of the record. And that's a key difference because the whole point of the rule that they violated is that you don't want, you want to have proper drainage of the water because if it lays stagnant for too long, mosquitoes come and they breed and you get disease. So if you're constantly recycling the water, then there's no drainage issue, right? And that's what he says happened, the plaintiffs say happened in March 2016. Whereas in July, as you see from the photographs, it was just a huge pool of stagnant, dirty water, which is exactly what DOB says you can't have. As for the other claims, they've been abandoned, plaintiff hasn't discussed them, and the taxpayer claim, the court correctly declined to exercise supplemental jurisdiction. So unless the court has any further- What do you make of Mr. Schwartz's argument that because Mr. Burkhart, and it is alleged, is openly hostile to Asian entrepreneurs in the construction business, and because of Mr. Burkhart's position, he can hold up work, he can harass, that that would have a natural tendency, and it's alleged, has in fact, driven away customers, clients, for his construction services. Is there no cause of action in there? Is there no remedy? Well, Sue, I think in this case, there's not, based on just what discovery the evidence has shown. And it's important to note that- The evidence has not shown, I mean, there were allegations, and I think there's evidence that Mr. Burkhart has made statements that would indicate that he would look with disfavor on any project that was being done by Asian Americans. Yes, so the allegations suggest that. But the key in a selective enforcement claim is that you were treated differently from someone else, that the government enforced against you in a situation, and then in a similar situation, did not enforce against someone else. And that is the key to proving a selective enforcement case. So you're saying that the allegation that I just outlined is not actionable? No, so there's two, you have to show two elements, right? And that would be the second element. But first, you have to, the threshold issue is the comparators, right? And that, there's just no, they identify no comparators. And this has been- I'm asking if there's any claim that exists independent of comparators if a person who is in a position to sabotage construction contracts expresses hostility based on race against people who are trying to do business. But hasn't actually sabotaged them in a way that- Well, the question is, is it- I don't think- Is it effective sabotage if it drives away clients and business? Or is there- Well, I think that's part of the- Unless you have comparators at this site and that site, you just don't have a claim, even if what I'm positing, it takes place. I think that that's correct. Well, I suppose it could be a torturous interference with a contract or something, but that's not alleged here. Well, like a state, yeah, like a state court. But I don't think you have like a federal or a constitutional violation unless you show. Yes. That's what I'm asking. Okay. Are there any other questions? No. All right. Thank you. Mr. Schweitzer, you have two minutes for rebuttal. So, I'd like to bring it back to Your Honor's question just for a moment. I think Your Honor highlighted a key difference between the Leclerc claim, which is the interference with the- Sorry, selective enforcement, and the separate Section 1981 claim, which is interference with ability to make contracts. The- Excuse me. The interference with the ability to make contracts does not require a comparator. It requires a demonstration that the plaintiff was a racial minority, specifically racial minority. And it requires evidence of discriminatory intent, which is also one of the prongs of the selective enforcement claim. It's analyzed similarly, but it is in this separate claim, which doesn't require a comparator. And evidence of actual interference with contracts, which there is here. In the selective enforcement claim, there is a separate element that there needs to be a comparator, and there is a missing element of interference with contracts. So that's a key difference between the two claims. The district court dismissed both. It shouldn't have. Even if this court finds that the comparator was not accurate for the Leclerc claim, or adequate for the Leclerc claim. Excuse me. As for the difference between March and July, the difference between the March and July conditions on the job site, the catchment pond was the same between both times. The difference happened to be that the drill was in operation at the one time and not at the other. But the drainage was exactly the same. It hadn't been changed. Excuse me. And it is the adequacy of the drainage that the inspection is supposed to be covering. Here we have the same catchment pond. You say that the pond was filled in July, right? And then in your opposition to the summary judgment, you're saying that it wasn't. It had been drained. Am I right about that? I'm not sure. Okay. I'll rest on the brief. All right. Thank you both. We will reserve decisions.